IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

**UNITED STATES OF AMERICA,**

    **Plaintiff,**

   **v.**                                          **CRIMINAL NO. 1:22-CR-39**
                                                                        **(KLEEH)**

**OLIVER MATHENY,**

    **Defendant.**

**MEMORANDUM OPINION AND ORDER REJECTING REPORT AND RECOMMENDATION
AND DENYING MOTION TO SUPPRESS ON OTHER GROUNDS**

Pending before the Court is a Report and Recommendation ("R&R") by the Magistrate Judge, recommending that the Court deny Defendant's motion to suppress. The Court agrees with the R&R's conclusion but disagrees with the reasoning contained therein. Accordingly, for the reasons discussed below, the R&R is rejected, and the motion to suppress is denied.

### I.   THE INDICTMENT

On May 3, 2022, the grand jury returned a five-count Indictment charging Defendant Oliver Matheny ("Matheny") with three counts of Attempted Production of Child Pornography – Previous Conviction, in violation of 18 U.S.C. §§ 2251(a), 2251(e), and 2, and two counts of Production of Child Pornography – Previous Conviction, in violation of 18 U.S.C. §§ 2251(a) and 2251(e).

**MEMORANDUM OPINION AND ORDER REJECTING REPORT AND RECOMMENDATION AND DENYING MOTION TO SUPPRESS ON OTHER GROUNDS**

## II. FACTS

The Court finds the following facts based on the testimony and arguments at the suppression hearing, the parties' briefs, and the exhibits to both the hearing and briefs.

On October 16, 2024, Matheny's then-girlfriend, who will be referred to herein as Witness No. 1, was in a meeting at the Monongalia County Prosecutor's Office in her capacity as the victim of a different crime. Transcript, ECF No. 48, at 6:10-19. She told someone in the Prosecutor's Office that she had evidence that would incriminate Matheny in a crime. Id. at 6:21-7:1. The Prosecutor's Office referred her to Detective John Wilhelm ("Wilhelm"), who was, at the time, a deputy sheriff in Monongalia County. Id. at 6:21-23; 5:1-8. Wilhelm met with her the same day. Id. at 7:2-7.

Witness No. 1 provided Wilhelm with a SanDisk SD card (the "SD card") and told him that it contained videos of Matheny's daughter's friends, who were minors, in a bathroom. Id. at 7:10-15; 9:5-9. She told Wilhelm that she had watched the videos and that they were filmed from a covert location. Id. at 7:12-15. She told him that she observed, on the videos, Matheny's daughter's friends engaging in multiple activities, including showering, and that they were partially clothed. Id. at 8:1-5; 34:12-16. Wilhelm had no other knowledge about the SD card before Witness No. 1 met

**MEMORANDUM OPINION AND ORDER REJECTING REPORT AND RECOMMENDATION AND DENYING MOTION TO SUPPRESS ON OTHER GROUNDS**

with him and provided it to him. Id. at 8:11-13.

Wilhelm spoke with another law enforcement officer about Matheny and learned that Matheny was a registered sex offender who had recently been arrested. Id. at 9:10-18. Despite believing that he did not need a warrant to review the contents of the SD card, Wilhelm applied for one. Id. at 9:19-10:6. Wilhelm's search warrant affidavit indicated that he was investigating a violation of a West Virginia law prohibiting child erotica. See Exh. 1, Motion, at ECF No. 24-1. The relevant section of the West Virginia Code provides,

> (a) Any person age eighteen or over who knowingly and intentionally produces, possesses, displays or distributes, in any form, any visual portrayals of minors who are partially clothed, where the visual portrayals are: (1) Unrelated to the sale of a commercially available legal product; and (2) used for purely prurient purposes, is guilty of a misdemeanor and, upon conviction thereof, shall be confined in jail for not more than one year or fined not more than $1,000, or both confined and fined.
>
> (b) As used in this section only:
>
> (1) "Purely prurient purposes" means for the specific purpose of sexual gratification or sexual arousal from viewing the visual portrayals prohibited by this section; and
>
> (2) "Commercially available" means for sale to the general public.
>
> (3) A "minor" is a child under the age of sixteen years, or a person who is sixteen

> years of age or older but less than eighteen
> years old and who is mentally defective or
> mentally incapacitated.

W. Va. Code § 61-8C-3a. Wilhelm sought permission to conduct "[a] forensic exam of a San Disk Plus 64 GB SD Card to seek any an [sic] all photographs, videos, audio recordings, or any other digital media obtained of children for sexual purposes." See Exh. 1, Motion, at ECF No. 24-1. Wilhelm cited the following facts in support of his belief that child erotica would be located on the SD card:

> On 10/16/2019 I Det. J. Wilhelm met with a
> victim of another crime. She provided me with
> the aforementioned SD Card. She stated it
> contained videos of children the trailer and
> bathroom of Oliver Matheny. She stated she
> obtained the SD card from a camera that was
> concealed in the trailer. I took the SD Card
> in my custody to preserve any evidence. I am
> requesting this warrant to perform a forensic
> exam of the SD Card to identify the victims.

Id. A state magistrate judge signed the warrant, and Wilhelm then reviewed the contents of the SD card. Transcript, ECF No. 48, at 15:18-21. When Wilhelm reviewed the SD card, he found that its contents corroborated Witness No. 1's description, and he did not see anything additional on it. Id. at 15:22-16:4. Wilhelm then applied for additional search warrants of residences that were accessible to Matheny, and when the warrants were executed, law enforcement found additional evidence to support the charges in

this case.

### III. REPORT AND RECOMMENDATION AND OBJECTIONS

Matheny argues that the warrant application failed to establish probable cause to search the SD card. In the R&R, the Magistrate Judge found that the warrant was supported by probable cause, and even if it was not, the warrant was salvaged by the Leon good faith exception. Matheny filed objections, challenging both findings. The parties also filed supplemental briefs.

When reviewing a magistrate judge's R&R, the Court must review de novo only the portions to which an objection has been timely made. 28 U.S.C. § 636(b)(1)(C). Otherwise, "the Court may adopt, without explanation, any of the magistrate judge's recommendations" to which there are no objections. Dellarcirprete v. Gutierrez, 479 F. Supp. 2d 600, 603–04 (N.D.W. Va. 2007) (citing Camby v. Davis, 718 F.2d 198, 199 (4th Cir. 1983)). Courts will uphold portions of a recommendation to which no objection has been made unless they are clearly erroneous. See Diamond v. Colonial Life & Accident Ins. Co., 416 F.3d 310, 315 (4th Cir. 2005). Out of an abundance of caution, the Court will conduct a de novo review of the factual and legal conclusions in the R&R.

### IV. DISCUSSION

While the Court agrees with the ultimate conclusion in the R&R that the motion to suppress should be denied, the Court

5

**MEMORANDUM OPINION AND ORDER REJECTING REPORT AND RECOMMENDATION AND DENYING MOTION TO SUPPRESS ON OTHER GROUNDS**

disagrees with the reasoning set forth therein. The Court finds that Wilhelm did not need a warrant to view the contents of the SD card. Even though a warrant was not necessary, the Court believes it appropriate to address some deficiencies in the warrant application.

    **A.    Because Witness No. 1 had viewed the contents of the SD card before providing it to law enforcement, Wilhelm was entitled to view the SD card without a warrant.**

The Fourth Amendment to the United States Constitution provides,

> The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

It is well-established that Fourth Amendment protection only limits governmental action and does not extend to a search or seizure conducted by a private actor. See Burdeau v. McDonnell, 256 U.S. 465, 475 (1921); see also United States v. Richardson, 607 F.3d 357, 364 (4th Cir. 2010). "[W]hen a third party provides the police with evidence that she obtained in the course of her own search, the police need not 'stop her or avert their eyes.'" United States v. Fall, 955 F.3d 363, 370 (4th Cir. 2020) (citation omitted). The Fourth Amendment "is not violated when the police

**MEMORANDUM OPINION AND ORDER REJECTING REPORT AND RECOMMENDATION AND DENYING MOTION TO SUPPRESS ON OTHER GROUNDS**

merely review the same information that was discovered during the private search." Id. This is commonly referred to as the "private search doctrine." See id.

There is a circuit split with respect to the extent to which law enforcement can expand upon a privately-conducted search of an electronic device, which the Fourth Circuit has recognized:

> The Eleventh and Sixth Circuits have held that there must be an exact one-to-one match between electronic files viewed by a private party and files later examined by police. Even if the police's extension of the search is de minimis, it loses the protection of the private search exception. See United States v. Sparks, 806 F.3d 1323 (11th Cir. 2015); United States v. Lichtenberger, 786 F.3d 478 (6th Cir. 2015).
>
> But, as the government points out, other circuits have allowed a more permissive application of the private search doctrine to electronic searches. The Seventh and Fifth Circuits have held that with respect to officers searching containers that were not examined by the private party, a more expansive officer search "would not necessarily be problematic if the police knew with substantial certainty, based on the statements of the private searches, their replication of the private search, and their expertise, what they would find inside." United States v. Runyan, 275 F.3d 449, 464 (5th Cir. 2001); see Rann v. Atchison, 689 F.3d 832, 838 (7th Cir. 2012). Runyan also held that the police do not exceed the private search when they examine more items within a closed container than did the private searchers. Runyan, 275 F.3d at 464. The reasoning behind this view relates more to access to the device in general than the

7

**MEMORANDUM OPINION AND ORDER REJECTING REPORT AND RECOMMENDATION AND DENYING MOTION TO SUPPRESS ON OTHER GROUNDS**

> specific information reviewed. Since the private party accessed the device, these courts reason that so too can the police. Id.

Id. at 370-71. The Fourth Circuit has not ruled on whether a one-to-one search is required, recently stating only that "the government may not commit 'additional invasions of [the defendant's] privacy' that 'exceed[] the scope of the [initial] private search.'" United States v. Jeffrey, No. 23-4264, 2024 WL 4866686, at *3 (4th Cir. Nov. 22, 2024) (unpublished) (citing United States v. Jacobsen, 466 U.S. 109, 115 (1984)).

Here, Matheny argues that Witness No. 1 did not search the SD card and that the Government failed to establish this fact during the suppression hearing. Witness No. 1 was not called as a witness during the suppression hearing. The Court disagrees with Matheny's contention, noting the following testimony by Wilhelm:

> Q. Okay. And what evidence did she said -- did she say that she had regarding Mr. Matheny and a crime?
>
> A. She provided a SanDisk SD card, and she claimed that there was some videos of juveniles in a bathroom. She'd recovered the disk from a camera in Mr. Matheny's house. She said she had watched the videos and that they were filmed in a covert position in the bathroom of -- and it filmed his daughter's friends.
>
> . . .
>
> Q. Okay. And did she indicate what she observed on these videos?

**MEMORANDUM OPINION AND ORDER REJECTING REPORT AND RECOMMENDATION AND DENYING MOTION TO SUPPRESS ON OTHER GROUNDS**

> A. Yeah. She indicated that she saw Mr. Matheny's daughter's friends in the bathroom engaging in multiple activities, partially clothed.
>
> . . .
>
> Q. Okay. Okay. Did you see anything on the SD card that was not already advised to you would be contained on it by Witness Number 1?
>
> A. No, ma'am.
>
> . . .
>
> Q. And you, I believe, testified she told you they were partially clothed. Did she explain that to you in any more detail?
>
> A. She didn't use those words, but she was talking -- she was describing how they were going to the bathroom and showering.

Transcript, ECF No. 48, at 7:8-15; 8:1-5; 15:22-25; 34:12-16. Based on Wilhelm's testimony, the Court finds that Witness No. 1 searched the SD card before providing it to Wilhelm. Wilhelm then viewed the SD card and did not exceed the scope of the search conducted by Witness No. 1. Accordingly, the private search doctrine is applicable here, and Wilhelm did not need a warrant to review the evidence in the SD card. Because the evidence in the SD card was lawfully accessed by law enforcement, the motion to

suppress is **DENIED**.[1]  Still, while it will not change the result here, the Court has concerns about the sufficiency of the warrant application and will discuss them below.

   **B.   Recognizing that Wilhelm did not need a warrant to view the contents of the SD card, the Court finds it important to address the deficiencies in Wilhelm's warrant application.**

"When reviewing the probable cause supporting a warrant, a reviewing court must consider only the information presented to the magistrate who issued the warrant." United States v. Wilhelm, 80 F.3d 116, 118 (4th Cir. 1996) (citing United States v. Blackwood, 913 F.2d 139, 142 (4th Cir. 1990)).  The Court then applies a "'totality-of-the-circumstances' test to determine whether probable cause supported a search warrant." Id. at 119 (citing Illinois v. Gates, 462 U.S. 213, 238 (1983)).  As the Supreme Court has explained,

> The task of the issuing magistrate is simply to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him, including the "veracity" and "basis of knowledge" of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place. And the duty of a reviewing court is simply to ensure that the magistrate had a "substantial

---

[1] The Court rejects the Government's arguments relating to FBI Special Agent Bronson and the independent source doctrine.  Bronson testified that, in applying for a search warrant, she relied on, in part, "the search of the residence that located the peephole in the bedroom[.]"  Transcript, ECF No. 48, at 43:12-20.  Accordingly, the FBI's investigation was not entirely independent of the investigation initiated by Wilhelm.

>       basis for . . . conclud[ing]" that probable
>       cause existed.

Gates, 462 U.S. at 238-39.

When a magistrate reviews an affidavit based on an informant's tip, two factors are "key" in deciding whether it creates probable cause: "the informant's 'veracity' or 'reliability' and his or her 'basis of knowledge.'" Wilhelm, 80 F.3d at 118 (citing Gates, 462 U.S. at 233). In addition, the extent to which the tip is corroborated is an important consideration. See United States v. Lalor, 996 F.2d 1578, 1581 (4th Cir. 1993) (citations omitted). The Fourth Circuit has criticized affidavits that do not mention the reliability of an informant's statements. See, e.g., Wilhelm, 80 F.3d at 120 (finding that the affidavit did not support probable cause, in part, because it "depended on information from an unnamed informant, and provided no indication of that informant's truthfulness or reliability").

Here, the affidavit presented to the state magistrate did not create probable cause to search the SD card. The affidavit contained no information about Witness No. 1's veracity, reliability, or basis of knowledge. It stated only that she was "a victim of another crime." While Wilhelm may have been aware of Witness No. 1's basis of knowledge, her basis of knowledge was not presented to the state magistrate in the affidavit. It matters

**MEMORANDUM OPINION AND ORDER REJECTING REPORT AND RECOMMENDATION AND DENYING MOTION TO SUPPRESS ON OTHER GROUNDS**

not only what Wilhelm knew, but also, most importantly, what the state magistrate knew.[2]

The "good faith" exception may sometimes apply to salvage a defective warrant. See United States v. Leon, 468 U.S. 897, 922 (1984). In Leon, the Supreme Court held that the exclusionary rule does not bar admission of evidence obtained when officers acted in objectively reasonable reliance on a search warrant that was ultimately found to be invalid. Id. "Leon teaches that a court should not suppress the fruits of a search conducted under the authority of a warrant, even a 'subsequently invalidated' warrant, unless 'a reasonably well trained officer would have known that the search was illegal despite the magistrate's authorization.'" United States v. Bynum, 293 F.3d 192, 195 (4th Cir. 2002) (citing Leon, 468 U.S. at 922 n.23).

There are, however, four situations in which the Leon good faith exception will not apply:

> (1) "if the magistrate or judge in issuing a warrant was misled by information in an affidavit that the affiant knew was false or would have known was false except for his reckless disregard of the truth;" (2) if "the issuing magistrate wholly abandoned his judicial role in the manner condemned in Lo-Ji Sales, Inc. v. New York, 442 U.S. 319, 99 S.Ct. 2319, 60 L.Ed.2d 920 (1979)"; (3) if the

---

[2] Wilhelm testified that he had verbal discussions with the state magistrate, but the content of those conversations was not established. See Transcript, ECF No. 48, at 14:19-22; 29:18-22.

>     affidavit supporting the warrant is "so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable;" and (4) if under the circumstances of the case the warrant is "so facially deficient — i.e., in failing to particularize the place to be searched or the things to be seized — that the executing officers cannot reasonably presume it to be valid."

United States v. Doyle, 650 F.3d 460, 467 (4th Cir. 2011) (citations omitted).

With respect to the third Leon exception, the Fourth Circuit has found that when an affidavit is "bare bones," it is not salvageable under Leon. See Wilhelm, 80 F.3d at 121. A "bare bones" affidavit is one that contains "wholly conclusory statements, which lack the facts and circumstances from which a magistrate can independently determine probable cause." Id. In Wilhelm, the Fourth Circuit held that the Leon good faith exception did not a salvage a warrant that "depended on information from an unnamed informant, and provided no indication of that informant's truthfulness or reliability." Id. at 120–23. The court held that the affidavit was "bare bones" and that the state magistrate had acted as a "rubber stamp." Id. Here, similarly, given that the affidavit says nothing about the reliability of Witness No. 1 or her basis of knowledge, the warrant, if it were necessary (it is not), would not be salvaged by the Leon good faith exception.

### V. CONCLUSION

For the reasons discussed, Wilhelm did not need a warrant to view the evidence on the SD card. While the Court agrees with the R&R's conclusion, it disagrees with its reasoning. Accordingly, the R&R is **REJECTED** [ECF No. 40], and the motion to suppress is **DENIED** [ECF No. 24].

It is so **ORDERED.**

The Clerk is directed to transmit copies of this Memorandum Opinion and Order to counsel of record.

DATED: February 10, 2025

*Tom S Kleeh*

THOMAS S. KLEEH, CHIEF JUDGE
NORTHERN DISTRICT OF WEST VIRGINIA